# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CR-10-216-HE |
| ) | |
| ZACHARY WILLIAMS, ) | |
| MICHAEL A. FELS, ) | |
| SHARON L. DREW and ) | |
| HSN NETWORK, LLC, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Defendant Health Solutions Network, LLC ("HSN") is charged in a six count superseding indictment with violations of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, and the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-397. HSN has filed a motion to suppress, a motion to dismiss Counts 1 and 3-6 of the superseding indictment, a motion to dismiss Count 2 and a motion for a Franks[1] hearing. The court concludes the motions should be denied.

The superseding indictment alleges that defendants Williams, Fels and Drew operated White Eagle RX ("White Eagle"), a pharmacy without a valid license, filling prescriptions for internet websites such as defendant HSN.[2] Count 1 charges all four defendants with conspiring to deliver, distribute and dispense fioricet, a controlled substance, by means of the

---

[1] *Franks v. Delaware*, 438 U.S. 154 (1978).

[2] According to the indictment White Eagle was "purportedly a pharmacy licensed by the Ponca Nation of Oklahoma." Superseding Indictment, p. 1.

internet in violation of 21 U.S.C. § 841(h)(1)(A) and (4). Count 2 charges all defendants with conspiring to hold misbranded drugs for sale and to introduce misbranded drugs, specifically fioricet, a controlled prescription drug, and soma and tramadol, prescription drugs, into interstate commerce in violation of 12 U.S.C. §§ 331(a), (k) and 333(a)(2). Counts 3-6 charge all defendants with distributing Fioricet, a Schedule III controlled substance.[3]

Motion to Suppress

HSN's motion challenges what it describes as two searches of White Eagle pharmacy. The first situation occurred on October 14, 2009, when a BIA Special Agent and a BIA police officer entered the pharmacy and photographed its contents.[4] The officers also searched two outside dumpsters. The second search took place on November 2, 2009, and was conducted pursuant to a warrant. HSN asserts that documents, materials and equipment, including HSN customer medical information sheets, were improperly seized. Because the premises searched were occupied by White Eagle and not HSN, an understanding of the relationship between the two entities is needed to determine whether HSN's Fourth Amendment rights were violated.

HSN entered into a Pharmacy Provider Agreement ("Agreement") with White Eagle,

---

[3]*The superseding indictment also includes a forfeiture charge.*

[4]*The pharmacy was located in what had formerly been the jail area of the Ponca Tribal Police Department and apparently was, at the time of the entry, occupied by the Bureau of Indian Affairs police. It is not clear that BIA entry into the jail area of its own office constituted a "search."*

a pharmacy owned by the Ponca Tribe and managed by Abaci Holdings. The Agreement provided that White Eagle would "provide prescription drugs and pharmaceutical products (collectively the 'Medications'), to those individuals ('customers') who have visited Internet based online sites that market Medications ('Internet Portals') and have obtained a prescription for a Medication from a licensed physician who is an independent contractor of HSN ...." HSN's Exhibit 6, p. 1. As explained by HSN, the purchase process began when a customer responded to an online ad. The advertiser then referred that person to HSN and HSN provided the customer with an online questionnaire. HSN then forwarded the completed questionnaire to a physician, who would issue a prescription which HSN would transmit to an online pharmacy, such as White Eagle. The pharmacy then shipped the medication to the customer.

In its motion HSN anticipates the government's defense – that it lacks standing to challenge the searches.[5] HSN claims that because it contractually agreed with White Eagle that protected patient information it sent the pharmacy would remain confidential as mandated by HIPPA,[6] it "had a legitimate, subjective expectation of privacy in their computer records and in any related documents located within White Eagle RX relating to protected patient health information." HSN's motion, pp. 8-9.

---

[5]The Supreme Court has concluded that "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" Minnesota v. Carter, 525 U.S. 83, 88(1998) (quoting Rakas v. Illinois, 439 U.S. 128, 140 (1978)).

[6]The Health Insurance Portability and Accountability Act.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To invoke the protection of the Fourth Amendment, a defendant "must demonstrate that [it] personally has an expectation of privacy in the place searched [or items seized] and that [its] expectation is reasonable'" Minnesota v. Carter, 525 U.S. 83, 88 (1998). "While corporations do possess some Fourth Amendment rights against unreasonable searches and seizures, ... the protection is not equal to that afforded to individuals." 810 William Meade Fletcher, Cyclopedia of the Law of Corporations § 4957.10. "'An expectation of privacy in commercial premises ... is different from, and indeed less than, a similar expectation in an individual's home.'" Carter, 525 U.S. at 90 (quoting New York v. Burger, 482 U.S. 691, 700 (1987)).

HSN bases its Fourth Amendment claim on "protected patient health information" included in certain documents it sent White Eagle.[7] HSN does not claim to have any possessory or other connection to the place searched, did not purport to have any control over the documents, and does not even appear to assert a possessory interest in the documents themselves that included the patient data. The mere fact that HSN and White Eagle contractually agreed to protect the medical information of third parties, as mandated by federal law, does not demonstrate that HSN has an expectation of privacy in the records that society would consider reasonable.

---

[7]*HSN does not specifically identify the documents or records, instead referring generally to "patient protected health information" or "HIPPA protected materials." HSN's motion, pp. 9-11*

HSN did not cite any case recognizing a privacy interest in a similar situation and the court has found none. As the customers, whose personal information HSN sent to White Eagle, would not be allowed to challenge the search, the court is not persuaded HSN should be found to have an expectation of privacy in the same information just because they contractually agreed, and are required by law, to protect it.

HSN has failed to demonstrate more than a tenuous connection with the place searched or items seized. It has not met its burden of showing that it had a legitimate expectation of privacy in documents seized from the premises of another business entity and its motion to suppress will be denied.[8]

Motion for Franks hearing

HSN has filed a motion requesting a Franks evidentiary hearing. As the court has concluded the defendant lacks the required privacy interest to challenge the pharmacy searches, its motion will be denied. *See* United States v. Mastromatteo, 538 F.3d 535, 544 (6th Cir. 2008) ("Determining that a defendant has Fourth Amendment standing is a prerequisite to granting a motion for a Franks hearing.")

Motion to Dismiss Counts 1 and 3-6

In its first proposition, HSN contends that the superseding indictment should be dismissed because White Eagle was a properly licensed tribal health care facility and, as such, was exempt from the in-person medical evaluation requirement of the Ryan Haight

---

[8]*Defendant's showing is insufficient to warrant an evidentiary hearing on its motion to suppress. Even accepting all of defendant's factual assertions as true, it does not come remotely close to demonstrating a privacy interest sufficient to challenge the search or searches.*

5

Online Pharmacy Consumer Protection Act of 2008, 21 U.S.C. § 829(e). This argument merits no detailed discussion as HSN has not met its initial burden of showing that White Eagle was an "Indian healthcare facility," as defined by 21 U.S.C. § 802(52)(B)(iv).[9] HSN offered no evidence that would plausibly support the conclusion that White Eagle was" a health care facility owned or operated by an Indian tribe or tribal organization ... carrying out a contract or compact under the Indian Self-Determination and Education Assistance Act." *Id.*

In its second proposition, HSN contends it is shielded from prosecution essentially because, as an agent of White Eagle, it is entitled to share in the Ponca Tribe's sovereign immunity. HSN relies on a recent Tenth Circuit decision, Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort, 629 F.3d 1173 (10th Cir 2010).

HSN is not charged under any statute that is directed to Indian country, Indian tribes, or individual Indians or to situations or status unique to those circumstances. Rather, it is charged under various federal statutes of general applicability which, by their terms, apply to all persons coming within their scope. The statutes underlying the conspiracy and distributions charges are silent regarding their application to Indians or tribal entities.

As the court has noted in its orders relating to similar claims by other defendants, when a federal law of general applicability is silent on the issue of its applicability to an Indian tribe or to individual Indians, the law applies equally to Indians except where (1) the

---

[9]*The evidence offered in this regard falls short of what would be needed for even a minimal showing. See HSN's motion, pp. 15-16.*

law touches "exclusive rights of self-governance in purely intramural-matters", (2) the application of the law to the tribe would "abrogate rights guaranteed by Indian treaties", or (3) there is proof "by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations...." United States v. Fox, 573 F.3d 1050, 1052 (10th Cir. 2009), quoting Nero v. Cherokee Nation of Oklahoma, 892 F.2d 1457, 1462-63 (10th Cir. 1989), *cert. denied*, ___ U.S. ___ (2009). *See generally* United States. v. Bruce, 394 F.3d 1215, 1220 (9th Cir. 2005) (noting, when discussing federal criminal jurisdiction over Indians and Indian country, that it had previously "held that federal criminal laws of general, nationwide applicability-such as the federal conspiracy statute, 18 U.S.C. § 371-apply to Indians unless a treaty specifically exempts them."). Here, none of the grounds for exception are present. The licensing or operation of an internet pharmacy is not a matter of internal self-governance. There is no suggestion that a treaty gives the Ponca Tribe the authority to operate an internet pharmacy outside the application of the general criminal laws.[10] And no plausible basis has been suggested for a conclusion that Congress did not intend for these statutes to apply to Indians or Indian tribes. Indeed, the various provisions of Title 21 plainly suggest the contrary. 21 U.S.C. § 841(h) prohibits the distribution of controlled substances "except as authorized by this subchapter...." The subchapter does not include anything that suggests a general exception for Indian tribes or their agents. The subchapter does, however, include 21 U.S.C. § 831, which sets additional

---

[10]*HSN has attached two treaties between the United States and the Ponca Tribe to its submissions, but offers nothing to suggest either treaty bears on the issues involved here.*

7

requirements for online pharmacies. The definitions applicable to the subchapter contain an exception from the definition of "online pharmacy" for Indian tribes in certain limited circumstances — involving health care facilities operated by a Tribe or tribal organization pursuant to a particular act of Congress[11] — but no other. 21 U.S.C. § 802(52)(B)(iv). Notwithstanding defendant's tortured effort to trace federal funds into White Eagle, it does not suggest any basis for concluding White Eagle was operated pursuant to the pertinent Act, or that the efforts of its purported agent HSN are somehow shielded by reason of the indicated exception. Plainly, Congress knew how to carve out an exception for matters related to Indian tribes when it wanted to, but it did not do so as to the circumstances embraced by the indictment in this case.

Breakthrough, the case HSN relies on, is not to the contrary and is inapplicable. It is a civil case and has nothing to do with the reach of federal criminal laws of general applicability. HSN is not entitled to have the charges dismissed on the basis of the Ponca Tribe's sovereign immunity.

Motion to Dismiss Count 2[12]

The superseding indictment charges defendants in Count 2 with engaging in a conspiracy to violate 21 U.S.C. § 331(a) and (k), by introducing misbranded drugs into interstate commerce and holding misbranded drugs for sale. While these provision do not

---

[11]The Indian Self-Determination and Education Assistance Act.

[12]Although HSN requested a hearing on its motion to dismiss Count2, it did not explain why a hearing was needed.

include an intent requirement, 21 U.S.C. §333 provides that the violation of § 331 with the intent to defraud or mislead is a felony. 21 U.S.C. § 333(a)(2). HSN argues that Count 2 – based on the sale and shipment of prescription medicine over the internet from a tribal pharmacy – should be dismissed because White Eagle held a valid pharmacy license issued by the Ponca Tribal Pharmacy Board.[13] It also asserts a vagueness challenge to the charge and contends the government has failed to allege facts demonstrating that it acted with the required specific intent to defraud or mislead. The government responds that because a tribal pharmacy board was never formed, a valid license was never issued to White Eagle, that the misbranding count is also based on the invalidity of the prescriptions that were filled, that the misbranding statute is not vague as applied, and that the indictment sufficiently alleges the intent element of the offense.

In its brief HSN acknowledges that "[p]rescription drugs fail to bear adequate directions for use and are misbranded unless they meet all regulatory requirements, including the requirement that the drugs are in the possession of a retail, hospital, or clinic pharmacy regularly and lawfully engaged in the dispensing of prescription drugs and dispensed pursuant to a valid prescription." HSN motion, pp. 11-12. However, HSN ignores the requirement that the prescription be valid, focusing solely on the requirement that the prescriptions be dispensed by a licensed pharmacy. Count 2 alleges that the medications White Eagle mailed to customers were misbranded, not just because the pharmacy was not

---

[13]*The government responds that White Eagle did not have a valid license because the procedure for issuing a license under the Ponca Tribe of Pharmacy Act was not followed.*

properly licensed, but also because the drugs were not "dispensed pursuant to a valid prescription." Superseding Indictment, p. 4. 21 U.S.C. § 353(b)(1);[14] United States v. Smith, 573 F.3d 639, 650 (8th Cir. 2009) ("A drug is 'misbranded' unless dispensed upon a 'prescription of a practitioner licensed by law to administer such drug.'") (quoting 21 U.S.C. § 353(b)(1)(C)). A valid prescription requires a bona fide physician-patient relationship, *id.* at 652, and the superseding indictment alleges that "[t]he prescriptions were written by ... physicians who did not see or examine the customer." Superseding Indictment, p. 3. *See* United States v. Nazir, 211 F.Supp.2d 1372, 1375 (S.D.Fla. 2002) (the term prescription, as used in 21 U.S.C. § 353(b)(1) "means only a bona fide order-i.e., directions for the preparation and administration of a medicine, remedy, or drug for a real patient who actually needs it after some sort of examination or consultation by a licensed doctor-and does not include pieces of paper by which physicians are directing the issuance of a medicine, remedy, or drug to patients who do not need it, persons they have never met, or individuals who do

---

*[14](b) Prescription by physician ...*
*(1) A drug intended for use by man which--*
*(A) because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or*
*(B) is limited by an approved application under section 355 of this title to use under the professional supervision of a practitioner licensed by law to administer such drug,*
*....*
*shall be dispensed only (I) upon a written prescription of a practitioner licensed by law to administer such drug ....The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.*
*21 U.S.C. § 353(b)(1).*

10

not exist."). Therefore, even if White Eagle had a valid license,[15] Count 2 nonetheless states an offense.

HSN's other grounds for dismissal warrant little discussion. While cast as a vagueness defense, HSN is not arguing that it did not have notice that its alleged conduct was forbidden by the FDCA, but rather that it did not violate the Act. Because the FDCA provided ample notice to HSN of the conduct that was proscribed, defendant's as-applied vagueness challenge fails.

Similarly unpersuasive is HSN's assertion that the superseding indictment fails to sufficiently allege that defendants acted with the intent to defraud and mislead. The Tenth Circuit has held that "[t]he government may premise criminal liability under § 333(a)(2) based upon an intent to mislead or defraud not only natural persons, but also government agencies if there is evidence that a defendant consciously sought to mislead drug regulatory authorities such as the FDA or a similar governmental agency." United States v. Mitcheltree, 940 F.2d 1329, 1347 (10th Cir. 1991). Evidence that defendants engaged in a conspiracy to

---

[15]*The court has considerable doubt whether the Ponca Tribe has the authority, grounded in tribal sovereignty or otherwise, to create a pharmacy licensing scheme directed to the circumstances alleged here. Among other things, the alleged activities involve distribution across the country to non-Indians and outside any recognized reservation to which the tribe's authority might normally extend. The federal statute specially applicable to internet pharmacies does not appear to contemplate some wide-open authorization or recognition of tribal pharmacies apart from those contracted or compacted under the Indian Self-Determination and Education Assistance Act (see 21 U.S.C. § 831). That and other statutes appear to implicitly, if not explicitly, assume the existence of state, rather than tribal regulation. However, as the government's argument is that a valid license was not issued as a matter of fact (by reason of the purported tribal structure never having been activated) and that the misbranding count remains in any event (by reason of the allegations as to whether proper prescriptions were used), it is unnecessary to the resolution of the present motions to address the broader legal issues as to the reach of a tribe's licensing powers.*

sell prescription drugs without a valid prescription could demonstrate that they intended to mislead, if not defraud, both the purchasing public and government agencies.

Accordingly, HSN's motion to suppress [Doc. #177], motion requesting a <u>Franks</u> hearing [Doc. # 178], motion to dismiss Count 2 [Doc. # 176] and motion to dismiss Count 1 and Counts 3-6 on the ground of tribal sovereignty are **DENIED**.  As defendants Fels and Drew joined in HSN's motion, their motion to suppress [Doc. #179] also is **DENIED**.

**IT IS SO ORDERED**.

Dated this 14th day of September, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE